UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| R &R PARTNERS, INC.,<br><br>                Plaintiff,<br>v.<br>HUMBLE TV, LLC,<br><br>                Defendant. | Case No. 3:19-cv-00016-MMD-WGC<br><br>ORDER |

Before the Court is Plaintiff's motion for default judgment (ECF No. 9) and motion for attorney fees and costs (ECF No. 10). To date, Defendant has not responded. For the reasons stated below, the Court grants both motions.

**I.    BACKGROUND**

Plaintiff entered into a Production Agreement with Defendant whereby Defendant agreed to produce video content for Plaintiff. (ECF No. 1 at 2.) Defendant was responsible for paying all talent (as a pass-through expense) with the payments it received from Plaintiff. (*Id.*) When Defendant completed its work, Plaintiff made all payments to Defendant. (*Id.* at 2-3.) But several individuals ("Talent") contacted Plaintiff and indicated that Defendant failed to pay them for their services on the project. (*Id.*) Plaintiff directly paid Talent a total of $171,500.00 to ensure that it has the rights to publish and broadcast the finished video product. (*Id.* at 3; ECF No. 9-1 at ¶ 11.) Plaintiff demanded that Defendant reimburse Plaintiff the $171,500.00, but Defendant refused. (ECF No. 1 at 3; ECF No. 9-1 at ¶ 11.)

On January 10, 2019, Plaintiff filed its Complaint against Defendant for (1) breach of contract, (2) contractual and tortious breach of the implied covenant of good faith and fair dealing, (3) conversion, and (4) unjust enrichment. (ECF No. 1.) On

January 17, 2019, Plaintiff served the Summons on Defendant (ECF No. 2), but Defendant never responded. Plaintiff filed an Application for Entry of Default. (ECF Nos. 6 and 7), and the Clerk entered default against Defendant. (ECF No. 8.)

On April 15, 2019, Plaintiff filed a motion for default judgment requesting $171,500. (ECF No. 9.) Plaintiff's motion acknowledges that it pled all four of its claims in the alternative for the same damages, and therefore focused on its breach-of-contract claim for purposes of the motion. (*Id.* at 5.) Moreover, Plaintiff filed a separate motion for attorney's fees and costs pursuant to the terms of the Production Agreement in the amount of $20,251.00. (ECF No. 10 at 2-3; ECF No. 1-1, ¶ 16(a) (Production Agreement).)

**II.     LEGAL STANDARD**

Obtaining a default judgment is a two-step process governed by the Federal Rules of Civil Procedure. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after the clerk enters default, a party must seek entry of default judgment under Rule 55(b).

Although entry of default by the clerk is a prerequisite to an entry of default judgment, "a plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted). Instead, whether a court will grant a default judgment is in the court's discretion. *Id.*

The Ninth Circuit has identified the following factors as relevant to the exercise of the court's discretion in determining whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to the
///

1 excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil
2 Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

**III. DISCUSSION**

**A. Procedural Requirements**

Plaintiff has satisfied the procedural requirements for default judgment pursuant to Fed. R. Civ. P. 55(b). First, the Clerk properly entered a default against Defendant pursuant to Federal Rule of Civil Procedure 55(a). (ECF No. 8.) Second, insofar as Defendant has not answered or otherwise responded to the Complaint, the notice requirement of Rule 55(b)(2) is not implicated. Thus, there is no procedural impediment to entering a default judgment.

**B. *Eitel* Factors**

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (S.D. Cal. 2002). Here, Defendant has not answered, made an appearance, or otherwise responded to the Complaint. Due to Defendant's refusal to appear in this action, the possibility of prejudice to Plaintiff in the absence of default judgment is great. If Plaintiff's motion for default judgment is not granted, Plaintiff will likely be without other recourse for recovery. Thus, this *Eitel* factor weighs in favor of entering default judgment.

The second and third *Eitel* factors favor a default judgment where the complaint sufficiently states a claim for relief under the "liberal pleading standards embodied in Rule 8" of the Federal Rules of Civil Procedure. *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978); *see* Fed. R. Civ. P. 8. Plaintiff seeks default judgment on its breach of contract claim. (ECF No. 1.) "Plaintiff in a breach of contract claim must show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006). Here, Plaintiff has (1) provided the Production Agreement signed by both parties and related invoices (ECF Nos. 1-2, 10-1, 10-2), (2) alleges that Defendant breached

the contract by failing to pay Talent as agreed upon (ECF No. 1 at 2-3) and (3) claims actual damage as a result of Defendant's failure to pay Talent or to reimburse Plaintiff for payments it made to Talent (*id.* at 3). Thus, Plaintiff has sufficiently pled its claim for breach of contract, which favors granting default judgment.

Under the fourth *Eitel* factor, the Court considers "the amount of money at stake in relation to the seriousness of defendants' conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "This requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). Here, Plaintiff seeks $171,500.00 in actual damages that it paid to Talent after Defendant refused to pay the same amount to Talent as a pass-through expense per the Production Agreement. (ECF No. 1 at 3.) Therefore, the fourth *Eitel* factor weighs in favor of Plaintiff.

The fifth *Eitel* factor considers the possibility of dispute as to any material fact in the case. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Upon entry of default, the court takes the factual allegations in the non-defaulting party's complaint as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted). "Accordingly, no genuine dispute of material facts would preclude granting Plaintiff's motion for entry of default judgment.

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. *Id.* The evidence shows that, on January 17, 2019, Plaintiff served the Complaint and Summons on Defendant's President/CEO (ECF No. 2 at 2), 27 days before the Clerk's Entry of Default on February 12, 2019 (ECF No. 13). Thus, given the extended period of time during which Defendant had notice of the Complaint and in which Defendant failed to answer or otherwise respond to the Complaint, it is unlikely that Defendant's failure to respond and subsequent default resulted from excusable neglect. In fact, Defendant has presented no excuse as of date.

The seventh Eitel factor states that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the "mere existence

of [Rule 55(b)] demonstrates that this 'preference, standing alone, is not dispositive.'" *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (citation omitted). Moreover, Defendant's failure to answer Plaintiff's Complaint makes a decision on the merits impractical, if not impossible. Thus, the Court is not precluded from entering default judgment against Defendants.

Overall, the *Eitel* factors weigh in favor of granting Plaintiff default judgment.

**C. Attorneys' Fees**

In diversity cases, state law governs the question of attorney's fees. *Kabatoff v. Safeco Ins. Co*, 627 F.2d 207, 210 (9th Cir.1980). Under Nevada law, "[t]he compensation of an attorney and counselor for his or her services is governed by agreement, express or implied, which is not restrained by law." NRS § 18.010(1). Plaintiff relies on the Production Agreement's indemnification provision (ECF No. 1-1, ¶ 16(a)) to argue it is entitled to recovery of reasonable attorney's fees. (ECF No. 10 at 304.) The Court agrees.

This action arises out of Defendant's failure to either pay Talent as a pass-through expense, as required under the Production Agreement, or to reimburse Plaintiff for payments it had to make to Talent. Plaintiff has demonstrated that the Production Agreement provides for Plaintiff, as the prevailing party, to be awarded reasonable attorneys' fees and costs.

Reasonable attorney's fees are based on the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The Court must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Next, the Court decides whether to adjust the lodestar calculation based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild,* Inc., 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. *See Fischer*, 214 F.3d at 1119 (citation omitted).

The Ninth Circuit set forth the following factors in *Kerr*:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70. Factors one through five are subsumed in the lodestar calculation. *See Morales v. City of San Rafael*, 96 F.3d 359, 364 n. 9 (9th Cir. 1996). Further, the sixth factor, whether the fee is fixed or contingent, *may not* be considered in the lodestar calculation. *See Davis v. City & Cnty. of S.F.*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993). Once calculated, the "lodestar" is presumptively reasonable. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987). Finally, only in "rare and exceptional cases" should a court adjust the lodestar figure. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal quotations omitted)*; see also Fischer*, 214 F.3d at 1119 n.4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

### 1. Reasonable Hourly Rate

Courts consider the experience, skill, and reputation of the attorney requesting fees when determining the reasonableness of an hourly rate. *Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). A reasonable hourly rate should reflect the prevailing market rates of attorneys practicing in the forum community for "similar services by lawyers of reasonably comparable skill, experience and reputation." *See id.*; *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984).

Plaintiff offers the affidavits of its counsel and counsel's billing statements to support its request for fees and costs and to demonstrate that the attorneys' fees requested are reasonable under the circumstances. (ECF No. 10-1 and 10-2.)

///

1 | Counsel's hourly rates range from $275 to $525 depending on their level of experience. The Court finds that such rates are reasonable.

### 2. Reasonable Hours Expended

In addition to evidence supporting the rates claimed, "[t]he party seeking an award of fees should submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 433; *see also Jordan*, 815 F.2d at 1263. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

Plaintiff demonstrates that its attorneys have expended 46.7 hours[1]—a reasonable amount of time—which, multiplied by the DW attorneys' respective rates, equals a lodestar of $20,881.50. However, Plaintiff's attorneys have presumably written down its fees because Plaintiff requests a total amount of $19,675.50 for 42.7 hours of attorney labor. (ECF No. 10 at 7.) This Court need not consider the *Kerr* factors to determine what amount, if any, the lodestar should be adjusted. Therefore, the Court grants fees in the amount of $19,675.50. [2]

### D. Costs

Plaintiff has submitted an affidavit supporting the expenses claimed and an invoice detailing costs incurred in prosecuting this matter in the amount of $575.50. (ECF No. 10-1 at 4.) The Court similarly grants Plaintiff's requested costs.

## III. CONCLUSION

It is therefore ordered that Plaintiff's motion for default judgment (ECF No. 9) and motion for attorney fees and costs (ECF No. 10) are granted.

---

[1] Mr. Irvine spent 20.1 hours working on the case for an aggregate of fees totaling $9,413.00. (ECF No. 10-2.) Mr. Desmond spent 15.9 hours working on the case for an aggregate of fees totaling $8,526.00. (*Id.*) Mr. Westergard spent 10.7 hours working on the case for an aggregate of fees totaling $2,942.50. (*Id.*)

[2] At times, Plaintiff requests $19,675.00 for attorneys' fees and $575.00 in filing fees (*see, e.g.,* ECF No. 10 at 7), which would have resulted in a total of $20,250 for attorneys' fees and costs—one dollar short than the total Plaintiff seeks. The Court deems this a typographical error and presumes that Plaintiff in fact requests $19,675.50 for attorneys' fees and $575.50 in filing fees.

The Clerk of the Court is directed to enter judgment against Defendant in the amount of $171,500.00 for actual damages and $20,251.00 for attorneys' fees and costs. The Clerk is further directed to close this case.

DATED THIS 1st day of November 2019.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE